# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-2744

_____

United States of America

*Plaintiff - Appellee*

v.

Veronique ZsaZsa Antique Muckle

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: July 3, 2014
Filed: July 3, 2014

_____

Before MURPHY, MELLOY, and BENTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Veronique ZsaZsa Antique Muckle was convicted in April 2013 on one count of witness retaliation. Her presentence report applied a cross reference under U.S.S.G. § 2J1.2(c)(1) for obstructing a criminal prosecution, which led to a

sentencing range for her offense of 121 to 151 months in prison. The district court[1] sentenced Muckle to 121 months after applying the United States Sentencing Guideline § 2J1.2(c)(1) cross reference. Muckle appeals, and we affirm.

Veronique Muckle and Angelique Vos were both members of a prescription drug trafficking conspiracy in Duluth, Minnesota and Superior, Wisconsin. One of the conspiracy's leaders, Lawrence Colton, had recruited Muckle to manage drug distribution in the area. Muckle eventually became a high ranking member of the organization and Colton's business partner. Muckle and Colton rented an apartment together for the purpose of distributing drugs. Vos was the girlfriend of another conspiracy leader, Jeffrey Liddell, with whom Muckle claims to have had a romantic relationship. Muckle, Vos, and Colton were arrested along with dozens of alleged coconspirators in September 2011.

Vos began cooperating with the government immediately after her arrest by confirming the conspiracy's leadership and identifying the sources, costs, and transporters of the prescription drugs. Rather than hiding her cooperation with law enforcement, Vos made it known to her codefendants, including Muckle and Colton. Beginning in February 2012, Muckle, Vos, and Colton were all held in the same Minnesota jail. Muckle and Vos awaited sentencing in the women's wing of the Sherburne County jail, while Colton was housed in the men's wing.

Colton's trial began in early August 2013, and Vos testified against him on August 14. At the end of that day, Vos and Colton were returned separately to their respective wings of the jail. Muckle was at that time being detained for disciplinary reasons in an intake unit separated from the rest of the jail by a security door. Videotape showed that on August 14 while walking to his housing unit at

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

approximately 6:30 p.m., Colton paused briefly outside the security door to speak to Muckle and continued talking to her over his shoulder after passing the door. Muckle then sat down on a chair, put on her shoes and socks, and tucked the cuffs of her pants into the tops of her socks. Jail officials testified at trial that this behavior was consistent with someone preparing for a "jail fight." Muckle then stood up and paced the cell until the next scheduled check when the door between the intake unit and the women's wing would be opened.

At approximately 6:58 p.m., a corrections officer from the women's wing unlocked the intake unit door and went inside it. As soon as the officer moved past her, Muckle sprinted through the door into the women's wing, closing the door behind her and locking the officer inside. Muckle then turned to find Vos, yelled "snitch!" and began striking her. She grabbed Vos by the hair and dragged her to the ground where she continued to hit her. Vos sustained several scratches, bruises, and bumps to her head before another inmate broke up the attack. After freeing herself from the intake unit cell, the corrections officer ordered a unit lockdown. When the officer attempted to restrain Muckle, the latter screamed "that bitch be snitching!" Muckle was then handcuffed and placed in a separate holding cell where she told an officer, "You ain't got to worry about me. I got who I wanted."

Muckle was charged with one count of witness retaliation in violation of 18 U.S.C. §§ 1513(b)(1), 1513(c), and 1515(a). At her trial in April 2014, the government introduced evidence showing that Muckle had told other inmates that Vos was a snitch. Vos herself testified that in addition to being a witness in Colton's trial, she was providing testimony to a grand jury in a case against four other conspirators. Witnesses for Muckle testified that her assault on Vos was also motivated by jealousy over Liddell. The jury convicted Muckle on April 12.

Muckle's presentence investigation report calculated a base offense level for obstructing justice under U.S.S.G. § 2J1.2. It also suggested that § 2J1.2(c)(1)

triggered a cross reference to § 2X3.1 for obstructing the prosecution of a criminal offense because the resulting base offense level was greater than under § 2J1.2. Over Muckle's objection, the district court applied the cross reference, bringing the total offense level to 30. Combined with a criminal history category of III, the resulting sentencing range was 121 to 151 months imprisonment. Muckle was sentenced to 121 months, to be served consecutively to the term she received for her underlying drug offense. She now appeals.

We review the sentencing court's construction and application of the sentencing guidelines de novo and its factual findings for clear error. United States v. Pappas, 715 F.3d 225, 228 (8th Cir. 2013). Section 2J1.2(c) directs the sentencing court to apply a cross reference to § 2X3.1 if a defendant's conduct involved obstructing the prosecution of a criminal offense. U.S.S.G. § 2J1.2(c). Muckle argues that a § 2J1.2(c)(1) cross reference to § 2X3.1 would require evidence that she intended her attack to affect the progress of Colton's prosecution. Because Muckle attacked Vos after knowing that she had completed her testimony in the trial, Muckle asserts the attack could not have been intended to obstruct the prosecution. At that point Muckle claims she could not have prevented or changed Vos' testimony.

While § 2X3.1 is more commonly applied for being an accessory after the fact, it also serves as a tool for calculating the base offense level for a particularly serious obstruction offense like witness retaliation. See United States v. Gallimore, 491 F.3d 871, 875 (8th Cir. 2007). In Gallimore, we rejected an argument that was nearly identical to the one Muckle now makes. There, we affirmed the district court's application of a § 2J1.2(c)(1) cross reference to §2X3.1 where the defendant had been aware of a witness's grand jury testimony and "carried out the assault [on the witness] in direct retaliation against it." Id. at 875. Although Gallimore argued that retaliation against a grand jury witness would only trigger the § 2J1.2(c) cross reference if it had some effect on a criminal proceeding, the commentary for § 2J1.2 lists "causing a witness bodily injury . . . in retaliation for providing testimony . . . in a federal

-4-

proceeding" as an example of an obstruction of justice warranting a cross reference to § 2X3.1. Id. at 876 (internal quotation marks omitted). As we observed in Gallimore, "the Sentencing Commission was concerned that retaliation against a witness for past testimony was likely to interfere with the effective administration of justice." Id. The trial record establishes that Muckle intentionally attacked and injured Vos for testifying in a federal trial, and we conclude that the district court did not err in applying the § 2J1.2(c)(1) cross reference to calculate her guideline sentencing range.

Muckle's argument that her case is more like United States v. Galaviz, 687 F.3d 1042 (8th Cir. 2012), than Gallimore is without merit. The enhancement at issue in Galaviz was for obstruction of justice under U.S.S.G. § 3C1.1, not obstructing a criminal prosecution under § 2J1.2(c)(1). Moreover, the Galaviz court applied the § 3C1.1 obstruction of justice enhancement after finding that the defendant had engaged in a conspiracy to murder a confidential informant. Id. We reversed because the already convicted defendant had had no reason to think that the informant would have intended to testify against him at sentencing. Id. at 1043. As in Gallimore, and in contrast to Galaviz, Muckle knew Vos had testified in a federal proceeding which could harm her business partner and attacked her for it at the first opportunity.

Based on the record here, the guideline commentary for § 2J1.2(c)(1), and our precedent in Gallimore, we conclude the district court did not err at Muckle's sentencing by applying a cross reference to § 2X3.1 for obstructing a criminal prosecution.

Accordingly, we affirm the judgment.

_____