# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3674

_____

United States of America

*Plaintiff - Appellee*

v.

Charles Maxwell Krause

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: October 19, 2018
Filed: January 30, 2019

_____

Before SHEPHERD, KELLY, and STRAS, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

A jury found Charles Maxwell Krause guilty of one count of damaging property of the United States valued at more than $1,000 after a drunk-driving incident in which Krause struck and destroyed a localizer antenna array at a

Lakeville, Minnesota area airport. The district court[1] sentenced Krause to two years probation and ordered restitution in the amount of $115,323.76. Krause challenges his conviction on two grounds: that the district court erroneously instructed the jury as to the elements of the offense and that the evidence was insufficient to support a guilty verdict. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

On the night of September 5, 2014, Krause, who was a licensed pilot, drove his Chevrolet Cruze onto the runway of Airlake Airport, a small, regional airport in Lakeville, Minnesota. To reach the runway from city streets, Krause had to leave the paved road, drive across a field, and drive around a gate. Krause drove his vehicle the entire distance of the runway at high speeds, continued past the end of the runway onto a grassy area, and struck head on a localizer antenna array—a device used to aid pilots in making instrument landings. Krause then drove into a ditch and flipped his vehicle, which came to rest in a nearby cornfield. Immediately after the crash, at about 11:30 p.m., Krause, who sustained only minor injuries, called his mother asking for a ride home. His mother testified at trial that Krause seemed disoriented on the call and was unsure of where he was located. She remained on the phone with him while he described his location, and she ultimately located him near the airport. Neither Krause nor his mother contacted authorities to report the incident because neither wanted to implicate Krause in a drunk-driving offense. The following morning, Krause called a tow truck to retrieve his vehicle.

On the morning of September 6, 2014, Lakeville Police Officer Thomas Stewart responded to a call about a damaged vehicle left in a cornfield near the runway. When he arrived at the scene, he observed the Chevrolet Cruze with

---

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

significant damage, including deployed airbags, a dented roof, and broken out windows. Based on the state of the vehicle, Officer Stewart believed it had been traveling at high speeds or had been "outrunning its headlights" and that it had flipped over before coming to rest. Shortly after Officer Stewart arrived, Krause arrived in a tow truck. Officer Stewart observed that Krause had bloodshot, watery eyes, was slurring his speech, and had the smell of an alcoholic beverage on his breath. Officer Stewart opined that Krause was still feeling the effects of alcohol when he encountered him.

Officer Stewart questioned Krause about the incident. Krause explained that he was the owner of the vehicle, but stated that a friend had been driving at the time of the incident. Concerned about the safety of the purported "friend" due to the extensive damage to the vehicle, Officer Stewart informed Krause that officers would check local hospitals to locate the driver. Krause then admitted that he had been the driver and sole occupant of the vehicle. Based upon his belief that Krause was intoxicated, Officer Stewart performed a preliminary breath test with Krause's consent. The test revealed that, at about 7:00 a.m., more than seven hours after the incident, Krause's blood alcohol content was .045. Officer Stewart asked Krause to accompany him to the Lakeville Police Department. At the police station, after being read his Miranda rights, Krause explained his version of the previous evening's events. Krause claimed he was unable to remember the incident but remembered drinking at a friend's house, and offered details about the house's location. Law enforcement later learned that Krause had been seen drinking the previous evening at the bar of a Lakeville bowling alley, that he appeared to be "getting pretty drunk," and that he was advised by a friend not to drive home based on his state of intoxication. Contrary to his version of events, Krause had never been at a friend's home that evening.

The localizer antenna array was owned by the Federal Aviation Administration, a federal agency. It was destroyed by the collision and the Airlake Airport operated

without a replacement for 12 days. During these 12 days, only pilots of aircraft with special equipment could make instrument landings. The localizer antenna array's replacement cost was $115,323.76.

Krause was charged with one count of willfully interfering with and disabling an air navigation facility—the localizer antenna array—in violation of 18 U.S.C. § 32(a)(5), and one count of injuring or committing any depredation against any property of the United States valued at more than $1,000, in violation of 18 U.S.C. § 1361. The matter proceeded to a jury trial. Krause offered as his defense that he was not criminally culpable due to voluntary intoxication. Krause testified that he had no memory of the events preceding the incident, but that he could recall the impact of his car crashing into the cornfield. Krause explained that he did not remember calling his mother or being picked up and that his first memory was riding in the tow truck the following morning. Krause testified that he could not remember where he had been drinking before the incident, but that he understood from others that he had been drinking at a bowling alley. He also attempted to address his dishonesty with Officer Stewart, explaining that he had lied about drinking at a friend's house because he had been a bowling alley patron for years and did not want to cause the bowling alley any trouble. Krause also admitted he had been dishonest about another driver because he was "scared of getting a DWI or DUI." A toxicology expert testified on Krause's behalf about Krause's state of intoxication at the time of the incident. The expert opined that, by extrapolating Krause's blood alcohol content from his breathalyzer test the following morning, Krause would have been "severely intoxicated" at the time of the incident.

Krause also testified about his flight training, acknowledging that he had practiced take-offs and landings at the Airlake Airport and that his flight training included learning about the dangers of unauthorized vehicles on runways and the markings and signage on runways aimed at preventing unauthorized runway incursions. Krause also acknowledged that the house where he lived with his parents

-4-

was only five miles away from the Airlake Airport. The director of the flight school where Krause had received his pilot's license and instrument-pilot rating testified that Krause became a licensed pilot in 2011 and received his instrument-pilot rating in 2012. The flight-school director testified that a localizer antenna array is used in all instrument training phases and that an instrument-rated pilot would necessarily have knowledge of localizer antenna arrays. He also testified that all flight students learn about safeguarding against runway incursions and learn about the signs and markings on runways that make runways distinct from city streets.

At the close of the government's case, the district court determined that the charge for willfully interfering with and disabling an air navigation facility required that the government show Krause had acted in order to interfere with aircraft in flight. Because the government presented no evidence to this effect, the district court granted Krause's motion for judgment of acquittal on that count. The remaining count of injuring or committing any depredation against any property of the United States went to the jury, which returned a guilty verdict. At sentencing, the district court ordered that Krause serve a two-year term of probation and pay restitution in the amount of the replacement cost of the localizer antenna array, or $115,323.76. This appeal follows.

II.

Krause first asserts that his conviction should be vacated because the district court erroneously instructed the jury as to the elements of the offense, arguing that the jury instruction failed to include the requirement that Krause was aware that the localizer antenna array was the property of the United States. Although we generally review jury instructions for abuse of discretion, "if as here statutory interpretation is required, it is an issue of law that we consider de novo." United States v. Carlson, 810 F.3d 544, 551 (8th Cir. 2016) (internal quotation marks omitted). "If we conclude that the district court's interpretation of the statute resulted in the omission

-5-

of a required element of the offense, we then apply harmless error review."  Id. (internal quotation marks omitted).

Under 18 U.S.C. § 1361, it is unlawful to  "willfully injure[] or commit[] any depredation against any property of the United States, or of any department or agency thereof . . . ."  A violation of this statute can result in a fine and/or not more than ten years imprisonment where the property damaged exceeds the sum of $1,000. We disagree with Krause's assertion that § 1361 demands that a defendant know the damaged property belongs to the United States.

First, Krause's argument that the offense requires knowledge of government ownership is not supported by the statute's plain language.  "In ascertaining the plain meaning of a statute, we presume that a legislature says in a statute what it means and means in a statute what it says."  Stanley v. Cottrell, Inc., 784 F.3d 454, 465 (8th Cir. 2015) (internal quotation marks omitted).  "When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete."  Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc., 651 F.3d 857, 862 (8th Cir. 2011) (internal quotation marks omitted).  The plain language of the statute unequivocally does not demand that a person have knowledge that the property willfully injured or destroyed belongs to the United States.  Although the word "willfully" requires that Krause acted knowingly and voluntarily, the term does not relate to the latter phrase: "property of the United States."  The mens rea of "willfully" modifies only "injure or commit"; it does not modify or have any impact on the words "property of the United States."  This language merely lays out a jurisdictional prerequisite: the property must belong to the United States for a person to be guilty of this offense.  See, e.g., Torres v. Lynch, 136 S. Ct. 1619, 1630-33 (2016) (explaining that the state-of-mind requirements in a criminal statute do not generally carry through to jurisdictional elements); United States v. X-Citement Video, Inc., 513 U.S. 64, 72 (1994) (stating that a state-of-mind requirement will

ordinarily be implied only to the "statutory elements that criminalize otherwise innocent conduct").

Second, Krause's argument that the unambiguous wording of the statute should be ignored is almost entirely premised on our previous decision, United States v. Bangert, 645 F.2d 1297 (8th Cir. 1981). Krause's reliance on Bangert is misplaced. There, the defendants were charged under § 1361 for burning an American flag. In appealing their convictions, defendants argued that the evidence was insufficient to show that the flag belonged to the United States or that the defendants knew the flag belonged to the United States. Id. at 1304-05. In considering the sufficiency-of-the-evidence challenge, the Court stated that the elements of the crime included that the flag belonged to the government, that the flag was damaged, and that the defendants acted with knowledge that they were violating the law. Id. at 1305. Although evidence related to the defendants' knowledge of flag ownership allowed the jury to conclude that defendants knew they were violating the law, the Court did not hold that knowledge of government ownership is an essential element of a § 1361 offense. See id.

Because we hold that § 1361 does not mandate that the defendant know the damaged property belonged to the United States, we conclude that the district court properly instructed the jury as to the essential elements of the offense.

III.

Krause next asserts that his conviction is not supported by sufficient evidence, arguing that the evidence showed he lacked the requisite intent because of his voluntary intoxication. "We review the sufficiency of the evidence to sustain a conviction de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Morrissey, 895 F.3d 541, 549 (8th Cir.

-7-

2018) (internal quotation marks omitted). "This court will reverse for insufficient evidence only if no reasonable jury could have found [the defendant] guilty beyond a reasonable doubt. This standard applies even when the conviction rests entirely on circumstantial evidence." United States v. Ramirez, 362 F.3d 521, 524 (8th Cir. 2004) (citation omitted).

To convict Krause of violating § 1361, the government was required to prove that Krause damaged property, that the property belonged to the United States, and that Krause acted willfully. 18 U.S.C. § 1361. To prove Krause acted willfully, the government had to prove that he acted voluntarily, intentionally, and with the knowledge that his conduct was unlawful. See Bryan v. United States, 524 U.S. 184, 201 (1998) (Scalia, J., dissenting) (explaining that the definition of willfully includes "an act which is intentional, or knowing, or voluntary, as distinguished from accidental" (citation omitted)); Johnson v. U.S. Bancorp Broad-Based Change in Control Severance Pay Program, 424 F.3d 734, 740 (8th Cir. 2005); Jury Instr. at 12, Dist. Ct. Dkt. 89. But, as the district court instructed the jury, Krause's intoxication would provide a legal excuse if the evidence showed that the effect of the intoxication made it impossible for Krause to have acted willfully. Jury Instr. at 12; see also United States v. Kenyon, 481 F.3d 1054, 1069-70 (8th Cir. 2007) (discussing voluntary intoxication as a defense to a specific intent crime).

As evidence that his state of intoxication rendered him unable to act willfully, Krause offered testimony from a toxicology expert that Krause would have been "severely intoxicated" at the time of the incident and would have had a blood alcohol content of at least .25, more than three times the legal limit; testimony that Officer Stewart observed the smell of an alcoholic beverage on Krause's breath and opined that he was still feeling the effects of alcohol the morning after the incident; testimony that Krause's friend observed him "drunk" at the bowling alley and that she urged him not to drive; testimony from Krause's mother that he exhibited signs of intoxication immediately following the crash, including his disorientation when he

called her for a ride; and physical evidence of the straight tracks of the vehicle's path, which Krause argued was sufficient to show that he was intoxicated and was unaware of what he was doing in striking the antenna array.

But even where "the evidence rationally supports two conflicting hypotheses, the reviewing court will not disturb the conviction." United States v. Serrano-Lopez, 366 F.3d 628, 634 (8th Cir. 2004) (citation omitted). To secure a guilty verdict, the government "need not exclude every reasonable hypothesis of innocence." Id. (quoting United States v. Butler, 238 F.3d 1001, 1004 (8th Cir. 2001)). Although Krause presented evidence of intoxication, the jury was permitted to discredit the hypothesis that Krause was so intoxicated he could not act willfully in favor of the conclusion that Krause willfully destroyed the antenna array.

Even considering the evidence of Krause's intoxication, sufficient evidence supports the jury's conclusion, beyond a reasonable doubt, that Krause acted willfully in driving his car into the localizer antenna array. The jury heard evidence of Krause's previous flight training; his knowledge of aircraft and air traffic control, instrumental flying, air navigation, and associated equipment; evidence of Krause's familiarity with runway markings and his knowledge of the dangers of cars on runways; testimony that Krause had to leave a paved road, drive past a fence, and over a field to access the runway; that he controlled his vehicle at high speeds the length of the runway; that he hit the center of the localizer antenna array; that he was able to call his mother to arrange a ride home; that he directed his mother to his exact location when she had difficulty locating him; that he called a tow truck the following morning in an attempt to avoid criminal culpability; and that he lied to law enforcement about the details surrounding the event to avoid culpability and to protect the bowling alley he frequented. Taken together, Krause's actions demonstrate a level of rational, knowing, volitional, and intentional actions from which the jury could conclude that Krause willfully destroyed the antenna array. Cf. United States v. Thomas, 565 F.3d 438, 442-43 (8th Cir. 2009) (concluding that, under a

preponderance of the evidence standard, evidence of defendant's actions in carrying out burglary, including driving to scene and locating correct apartment, and attempts to hide conduct from police by discarding weapon and pretending to be asleep sufficiently negated voluntary intoxication defense). We thus cannot conclude that no jury could have found Krause to have acted willfully beyond a reasonable doubt.

IV.

For the foregoing reasons, we affirm.

_____