# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-1365

_____

United States of America

*Plaintiff - Appellee*

v.

Mark Palmer

*Defendant - Appellant*

_____

No. 18-1367

_____

United States of America

*Plaintiff - Appellee*

v.

Samuel Leinicke

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 15, 2019
Filed: March 6, 2019

_____

Before GRUENDER, WOLLMAN, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Mark Palmer and Samuel Leinicke were convicted of several conspiracy crimes, including conspiracy to distribute and possess with intent to distribute controlled substance analogues in violation of 21 U.S.C. §§ 813, 841, and 846. They were sentenced to 168 and 48 months' imprisonment, respectively. They appeal the district court's[1] denial of their motion to dismiss the indictment, arguing that the Controlled Substance Analogue Enforcement Act (Analogue Act or Act) is unconstitutionally vague. In addition, Palmer asserts that the indictment failed to set forth facts sufficient to show his knowledge that the chemicals involved were covered by the Act. We affirm.

Palmer and Leinicke were indicted in June 2015 for their participation in a conspiracy to distribute synthetic narcotics. The scheme involved importing chemicals from China in falsely labeled containers to evade detection. Once the chemicals arrived in the United States, they were transformed into a usable form, packaged in small amounts, and distributed with a label reading "not for human consumption." The products were given names such as "Black Arts" and "Devil's Dank." Employees of the operation were told that the product was potpourri, but several workers at the bagging facility discovered otherwise when they observed coworkers smoking the product during breaks. The co-conspirators used chemicals that mimicked the effects of controlled substances but were not yet listed on federal controlled substance schedules in their attempt to foil law enforcement efforts.

_____

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri, adopting the report and recommendation of the Honorable David D. Noce, United States Magistrate Judge for the Eastern District of Missouri.

-2-

The indictment charged Palmer and Leinicke with "knowingly and unlawfully combin[ing], conspir[ing], agree[ing], and confederat[ing] together with each other and other persons . . . to distribute and to possess with the intent to distribute Schedule I controlled substances and Schedule I controlled substance analogues intended for human consumption." It contained the following pertinent factual allegations: "P[almer] . . . would import synthetic drug chemicals from other countries including China, to various locations in the United States"; "the defendants . . . would periodically change chemicals in an attempt to avoid federal drug scheduling regulations while still producing synthetic drugs which had the same physiological effect creating a 'high' that mimics the effects of a controlled substance"; and "[the] drugs would be intended for human consumption although they carried [a ']not for human consumption' label in an attempt to thwart drug-trafficking laws." The indictment also listed six controlled substance analogues contained in the synthetic narcotics distributed by Palmer and Leinicke.

An expert for the government testified at trial that he had performed a comparative analysis on each of the alleged analogues. He used structural charts and three-dimensional presentations to show the jury how each compound named in the indictment is an analogue of a particular controlled substance based on its chemical structure. Another expert for the government testified that he had analyzed the pharmacological effects of the compounds and found each to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that was substantially similar to the effect of a particular controlled substance. An expert for the defense testified that none of the substances are substantially similar to controlled substances.

We review *de novo* the district court's denial of a motion to dismiss an indictment. United States v. Askia, 893 F.3d 1110, 1116 (8th Cir. 2018). "To defeat a vagueness challenge, a penal statute must pass a two-part test: The statute must first

provide adequate notice of the proscribed conduct, and second, not lend itself to arbitrary enforcement." United States v. Berger, 553 F.3d 1107, 1110 (8th Cir. 2008).

A "controlled substance analogue" for purposes of the Analogue Act is defined as a substance:

(i)   the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;

(ii)  which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to . . . the . . . effect . . . of a controlled substance in schedule I or II; or

(iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect . . . that is substantially similar to . . . the . . . effect . . . of a controlled substance in schedule I or II.

21 U.S.C. § 802(32)(A).

As we recognized in United States v. Carlson, 810 F.3d 544, 550-51 (8th Cir. 2016), the Supreme Court determined in McFadden v. United States, 135 S. Ct. 2298, 2306-07 (2015), that the Analogue Act is not unconstitutionally vague "because the statute's 'knowingly or intentionally' scienter requirement alleviates vagueness concerns by 'narrow[ing] the scope of its prohibition, and limit[ing] prosecutorial discretion.'" Carlson, 810 F.3d at 550-51 (alterations in original) (quoting McFadden, 135 S. Ct. at 2307). Palmer and Leinicke contend, however, that under Johnson v. United States, 135 S. Ct. 2551 (2015), decided eight days after McFadden, we must find the Act to be unconstitutionally vague. In Johnson, the Supreme Court invalidated the Armed Career Criminal Act's residual clause on vagueness grounds. Under the residual clause, courts had applied the categorical approach to determine whether "an idealized ordinary case of the crime [charged]" presented a "serious potential risk" of physical injury. Id. at 2561. The Court concluded that "the

-4-

indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges," thus violating the Fifth Amendment's Due Process Clause. Id. at 2557. Palmer and Leinicke argue that application of the categorical approach likewise renders the Analogue Act unconstitutionally vague. Because we do not apply the categorical approach under the Analogue Act, their argument is unavailing.

Moreover, we do not believe that Johnson's reasoning otherwise affects the Court's conclusion in McFadden, nor our subsequent application of McFadden in Carlson. As the Court explicitly noted in Johnson, "we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as 'substantial risk' to real-world conduct." Id. at 2561; see also United States v. Prickett, 839 F.3d 697, 700 (8th Cir. 2016) (per curiam) (declining to extend Johnson to other sections of the Armed Career Criminal Act). The Analogue Act calls for precisely that: application of qualitative standards to real-world conduct. And unlike the residual clause, the Analogue Act has presented our court and our sister circuits little interpretive difficulty. Compare Johnson, 135 S. Ct. at 2560 ("Nine years' experience trying to derive meaning from the residual clause convinces us that we have embarked upon a failed enterprise."), with Berger, 553 F.3d at 1110 ("[T]he [Analogue Act] is not unconstitutionally vague."), and United States v. Klecker, 348 F.3d 69, 72 (4th Cir. 2003) ("[C]ourts of appeals have unanimously rejected vagueness challenges to Analogue Act prosecutions."). To the extent that Palmer and Leinicke argue that "the language of the Analogue Act itself [is] unconstitutionally void for vagueness in violation of the Fifth Amendment," Leinicke Br. 12, their argument is foreclosed by Carlson.

Palmer and Leinicke also purport to bring an as-applied challenge to the Act's constitutionality. For an as-applied challenge, "we look to whether the statute gave adequate warning, under a specific set of facts, that the defendant's behavior was a criminal offense." See United States v. Washam, 312 F.3d 926, 931 (8th Cir. 2002).

Palmer and Leinicke first contend that a reasonable person cannot determine whether a given substance's chemical structure is "substantially similar" to that of a controlled substance. But they fail to rebut the government expert's testimony at trial that the analogues at issue do have chemical structures substantially similar to those of controlled substances. See Berger, 553 F.3d at 1110 (concluding that chemical structures were substantially similar based on expert testimony). Palmer and Leinicke also argue that the list of narcotic effects in § 802(32)(A)(I) and (ii)—depressant, stimulant, and hallucinogenic—is underinclusive. Again, however, they do not attempt to refute the expert trial testimony that each analogue used in their scheme did in fact have a depressant, stimulant, or hallucinogenic effect. The defense expert's disagreement with the government experts does not alter our conclusion. See Washam, 312 F.3d at 931 ("We have held that all experts need not agree . . . in order to affirm a conviction under the Analogue Statute."). Palmer and Leinicke have thus failed to show that the Act is unconstitutionally vague as applied to them.

Finally, the indictment alleged sufficient facts to show Palmer's knowledge that his conduct violated the Analogue Act. An indictment is adequate "if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." United States v. Mann, 701 F.3d 274, 288 (8th Cir. 2012) (internal quotation marks and citations omitted). The indictment properly tracks the statutory language, charging Palmer with knowing entry into the conspiracy. See United States v. Sewell, 513 F.3d 820, 821 (8th Cir. 2008). It then sets forth facts sufficient to allege Palmer's knowledge: that he personally imported chemicals containing controlled substances and/or controlled substance analogues, including those specifically named; that he periodically changed chemicals to avoid controlled substance regulations; and that he used the chemicals to produce synthetic drugs that mimicked the effects of controlled substances and were intended for human consumption. See McFadden, 135 S. Ct. at 2304 n.1 ("Circumstantial evidence [of knowledge] could include, for example, a

defendant's concealment of his activities, evasive behavior with respect to law enforcement, [and] knowledge that a particular substance produces a 'high' similar to that produced by controlled substances . . . ."). The indictment was therefore not "so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted." Mann, 701 F.3d at 288.

The judgment is affirmed.

_____