(Slip Opinion)                OCTOBER  TERM,  2014                                1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## MCFADDEN *v.* UNITED STATES

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 14–378.  Argued April 21, 2015—Decided June 18, 2015

Petitioner McFadden was arrested and charged with distributing controlled substance analogues in violation of the federal Controlled Substance Analogue Enforcement Act of 1986 (Analogue Act), which identifies a category of substances substantially similar to those listed on the federal controlled substances schedules, 21 U. S. C. §802(32)(A), and instructs courts to treat those analogues as schedule I controlled substances if they are intended for human consumption, §813.  Arguing that he did not know the "bath salts" he was distributing were regulated as controlled substance analogues, McFadden sought an instruction that would have prevented the jury from finding him guilty unless it found that he knew the substances he distributed had chemical structures and effects on the central nervous system substantially similar to those of controlled substances.  Instead, the District Court instructed the jury that it need only find that McFadden knowingly and intentionally distributed a substance with substantially similar effects on the central nervous system as a controlled substance and that he intended that substance to be consumed by humans.  McFadden was convicted.  The Fourth Circuit affirmed, holding that the Analogue Act's intent element required only proof that McFadden intended the substance to be consumed by humans.

*Held*: When a controlled substance is an analogue, §841(a)(1) requires the Government to establish that the defendant knew he was dealing with a substance regulated under the Controlled Substances Act or Analogue Act.  Pp. 4–11.

  (a) In addressing the treatment of controlled substance analogues under federal law, one must look to the CSA, which, as relevant here, makes it "unlawful for any person knowingly . . . to distribute . . . a

controlled substance." §841(a)(1). The ordinary meaning of that provision requires a defendant to know only that the substance he is distributing is some unspecified substance listed on the federal drug schedules. Thus, the Government must show either that the defendant knew he was distributing a substance listed on the schedules, even if he did not know which substance it was, or that the defendant knew the identity of the substance he was distributing, even if he did not know it was listed on the schedules.

Because the Analogue Act extends that framework to analogous substances, the CSA's mental-state requirement applies when the controlled substance is, in fact, an analogue. It follows that the Government must prove that a defendant knew that the substance he was distributing was "a controlled substance," even in prosecutions dealing with analogues. That knowledge requirement can be established in two ways: by evidence that a defendant knew that the substance he was distributing is controlled under the CSA or Analogue Act, regardless of whether he knew the substance's identity; or by evidence that the defendant knew the specific analogue he was distributing, even if he did not know its legal status as a controlled substance analogue. A defendant with knowledge of the features defining a substance as a controlled substance analogue, §802(32)(A), knows all of the facts that make his conduct illegal. Pp. 4–8.

(b) The Fourth Circuit did not adhere to §813's command to treat a controlled substance analogue as a controlled substance listed in schedule I by applying §841(a)(1)'s mental-state requirement. Instead, it concluded that the only mental-state requirement for analogue prosecutions is the one in §813—that an analogue be "intended for human consumption." That conclusion is inconsistent with the text and structure of the statutes.

Neither the Government's nor McFadden's interpretation fares any better. The Government's contention that §841(a)(1)'s knowledge requirement as applied to analogues is satisfied if the defendant knew he was dealing with a substance regulated under some law ignores §841(a)(1)'s requirement that a defendant know he was dealing with "a controlled substance." That term includes only drugs listed on the federal drug schedules or treated as such by operation of the Analogue Act; it is not broad enough to include all substances regulated by any law. McFadden contends that a defendant must also know the substance's features that cause it to fall within the scope of the Analogue Act. But the key fact that brings a substance within the scope of the Analogue Act is that the substance is "controlled," and that fact can be established in the two ways previously identified. *Staples* v. *United States*, 511 U. S. 600, distinguished. Contrary to McFadden's submission, the canon of constitutional avoidance "has

Syllabus

no application" in the interpretation of an unambiguous statute such as this one. *Warger* v. *Shauers*, 574 U. S. \_\_\_, \_\_\_. But even if the statute were ambiguous, the scienter requirement adopted here "alleviate[s] vagueness concerns" under this Court's precedents. *Gonzales* v. *Carhart*, 550 U. S. 124, 149. Pp. 8–10.

    (c) The Government argues that no rational jury could have concluded that McFadden was unaware that the substances he was distributing were controlled under the CSA or Analogue Act and that any error in the jury instruction was therefore harmless. The Fourth Circuit, which did not conduct a harmless-error analysis, is to consider that issue in the first instance. Pp. 10–11.

753 F. 3d 432, vacated and remanded.

    THOMAS, J., delivered the opinion of the Court, in which SCALIA, KENNEDY, GINSBURG, BREYER, ALITO, SOTOMAYOR, and KAGAN, JJ., joined. ROBERTS, C. J., filed an opinion concurring in part and concurring in the judgment.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 14–378

_____

## STEPHEN DOMINICK McFADDEN, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

[June 18, 2015]

JUSTICE THOMAS delivered the opinion of the Court.

The Controlled Substance Analogue Enforcement Act of 1986 (Analogue Act) identifies a category of substances substantially similar to those listed on the federal controlled substance schedules, 21 U. S. C. §802(32)(A), and then instructs courts to treat those analogues, if intended for human consumption, as controlled substances listed on schedule I for purposes of federal law, §813. The Controlled Substances Act (CSA) in turn makes it unlawful knowingly to manufacture, distribute, or possess with intent to distribute controlled substances. §841(a)(1). The question presented in this case concerns the knowledge necessary for conviction under §841(a)(1) when the controlled substance at issue is in fact an analogue.

We hold that §841(a)(1) requires the Government to establish that the defendant knew he was dealing with "a controlled substance." When the substance is an analogue, that knowledge requirement is met if the defendant knew that the substance was controlled under the CSA or the Analogue Act, even if he did not know its identity. The knowledge requirement is also met if the defendant knew

the specific features of the substance that make it a "'controlled substance analogue.'" §802(32)(A). Because the U. S. Court of Appeals for the Fourth Circuit approved a jury instruction that did not accurately convey this knowledge requirement, we vacate its judgment and remand for that court to determine whether the error was harmless.

I

In 2011, law enforcement officials in Charlottesville, Virginia, began investigating individuals at a Charlottesville video store for suspected distribution of "bath salts"—various recreational drugs used to produce effects similar to those of cocaine, methamphetamine, and other controlled substances. The owner of the store, Lois McDaniel, had been purchasing bath salts from petitioner Stephen McFadden for several months. McFadden had marketed the substances to her as "Alpha," "No Speed," "Speed," "Up," and "The New Up," and had compared them to cocaine and crystal meth. He had often sold those products with labels borrowing language from the Analogue Act, asserting that the contents were "not for human consumption" or stating that a particular product "does not contain any of the following compounds or analogues of the following compounds" and listing controlled substances. McDaniel purchased the bath salts for $15 per gram and resold them for $30 to $70 per gram.

After investigators had conducted two controlled buys from the store and confronted McDaniel, she agreed to cooperate in their investigation by making five controlled buys from McFadden. The Government intercepted the substances McFadden sent when they arrived at the local FedEx store. Like the substances sold in the video store, these substances were white and off-white powders packaged in small plastic bags. Chemical analysis identified the powders as containing, among other substances, 3,4-

Methylenedioxypyrovalerone, also known as MDPV; 3,4-Methylenedioxy-N-methylcathinone, also known as Methylone or MDMC; and 4-Methyl-N-ethylcathinone, also known as 4-MEC. When ingested, each of these substances is capable of producing effects on the central nervous system similar to those that controlled substances (such as cocaine, methamphetamine, and methcathinone) produce.

A federal grand jury indicted McFadden on eight counts of distribution of controlled substance analogues and one count of conspiracy. At trial, McFadden argued that he did not know the substances he was distributing were regulated as controlled substances under the Analogue Act. He and the Government also disagreed about what knowledge was required for a conviction. The Government sought an instruction requiring only "[t]hat the defendant knowingly and intentionally distributed a mixture or substance . . . [t]hat . . . was a controlled substance analogue . . . with the intent that it be consumed by humans." App. 26–27. McFadden sought a more demanding instruction requiring that he "knew that the substances that he was distributing possessed the characteristics of controlled substance analogues," including their chemical structures and effects on the central nervous system. *Id.*, at 29–30. The District Court compromised, instructing the jury that the statute required that "the defendant knowingly and intentionally distributed a mixture or substance that has" substantially similar effects on the nervous system as a controlled substance and "[t]hat the defendant intended for the mixture or substance to be consumed by humans." *Id.*, at 40.

The jury convicted McFadden on all nine counts. On appeal, McFadden insisted that the District Court "erred in refusing to instruct the jury that the government was required to prove that he knew, had a strong suspicion, or deliberately avoided knowledge that the [substances]

possessed the characteristics of controlled substance analogues." 753 F. 3d 432, 443 (CA4 2014). Rejecting that argument, the Court of Appeals affirmed. *Id.,* at 444, 446. Stating that it was bound by Circuit precedent, the court concluded that the "intent element [in the Act] requires [only] that the government prove that the defendant meant for the substance at issue to be consumed by humans." *Id.*, at 441; see *id.*, at 444.

We granted a writ of certiorari, 574 U. S ___ (2015), and now vacate the judgment of the Court of Appeals and remand.

## II

### A

The Analogue Act requires a controlled substance analogue, if intended for human consumption, to be treated "as a controlled substance in schedule I" for purposes of federal law. §1201, 100 Stat. 3207–13, 21 U. S. C. §813. We therefore must turn first to the statute that addresses controlled substances, the CSA. The CSA makes it "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." §401(a)(1), 84 Stat. 1260, 21 U. S. C. §841(a)(1). Under the most natural reading of this provision, the word "knowingly" applies not just to the statute's verbs but also to the object of those verbs—"*a* controlled substance." See *Flores-Figueroa* v. *United States*, 556 U. S. 646, 650 (2009); *id.,* at 657 (SCALIA, J., concurring in part and concurring in judgment); *id.,* at 660–661 (ALITO, J., concurring in part and concurring in judgment). When used as an indefinite article, "a" means "[s]ome undetermined or unspecified particular." Webster's New International Dictionary 1 (2d ed. 1954). And the CSA defines "controlled substance" as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or

V." §802(6) (internal quotation marks omitted). The ordinary meaning of §841(a)(1) thus requires a defendant to know only that the substance he is dealing with is some unspecified substance listed on the federal drug schedules. The Courts of Appeals have recognized as much. See, *e.g., United States* v. *Andino*, 627 F. 3d 41, 45–46 (CA2 2010); *United States* v. *Gamez-Gonzalez*, 319 F. 3d 695, 699 (CA5 2003); *United States* v. *Martinez*, 301 F. 3d 860, 865 (CA7 2002).

That knowledge requirement may be met by showing that the defendant knew he possessed a substance listed on the schedules, even if he did not know which substance it was. Take, for example, a defendant whose role in a larger drug organization is to distribute a white powder to customers. The defendant may know that the white powder is listed on the schedules even if he does not know precisely what substance it is. And if so, he would be guilty of knowingly distributing "a controlled substance."

The knowledge requirement may also be met by showing that the defendant knew the identity of the substance he possessed. Take, for example, a defendant who knows he is distributing heroin but does not know that heroin is listed on the schedules, 21 CFR §1308.11 (2014). Because ignorance of the law is typically no defense to criminal prosecution, *Bryan* v. *United* States, 524 U. S. 184, 196 (1998), this defendant would also be guilty of knowingly distributing "a controlled substance."[1]

―――――――――

[1] The Courts of Appeals have held that, as with most *mens rea* requirements, the Government can prove the requisite mental state through either direct evidence or circumstantial evidence. Direct evidence could include, for example, past arrests that put a defendant on notice of the controlled status of a substance. *United States* v. *Abdulle*, 564 F. 3d 119, 127 (CA2 2009). Circumstantial evidence could include, for example, a defendant's concealment of his activities, evasive behavior with respect to law enforcement, knowledge that a particular substance produces a "high" similar to that produced by controlled substances, and knowledge that a particular substance is

The Analogue Act extends the framework of the CSA to analogous substances. 21 U. S. C. §813. The Act defines a "controlled substance analogue" as a substance:

> "(i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;
>
> "(ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or
>
> "(iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II." §802(32)(A).

It further provides, "A controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in schedule I." §813.

The question in this case is how the mental state requirement under the CSA for knowingly manufacturing, distributing, or possessing with intent to distribute "a controlled substance" applies when the controlled substance is in fact an analogue. The answer begins with §841(a)(1), which expressly requires the Government to prove that a defendant knew he was dealing with "a controlled substance." The Analogue Act does not alter that provision, but rather instructs courts to treat controlled

---

subject to seizure at customs. *United States* v. *Ali*, 735 F. 3d 176, 188–189 (CA4 2013). The Government presented such circumstantial evidence in this case, and neither party disputes that this was proper.

substance analogues "as . . . controlled substance[s] in schedule I." §813. Applying this statutory command, it follows that the Government must prove that a defendant knew that the substance with which he was dealing was "a controlled substance," even in prosecutions involving an analogue.[2]

That knowledge requirement can be established in two ways. First, it can be established by evidence that a defendant knew that the substance with which he was dealing is some controlled substance—that is, one actually listed on the federal drug schedules or treated as such by operation of the Analogue Act—regardless of whether he knew the particular identity of the substance. Second, it can be established by evidence that the defendant knew the specific analogue he was dealing with, even if he did not know its legal status as an analogue. The Analogue Act defines a controlled substance analogue by its features, as a substance "the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II"; "which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than" the effect of a controlled substance in schedule I or II; or which is represented or intended to have that effect with respect to a particular person. §802(32)(A). A defendant who possesses a substance with knowledge of

––––––––––

[2] The Government has accepted for the purpose of this case that it must prove two elements to show that a substance is a controlled substance analogue under the definition in §802(32)(A): First, that an alleged analogue is substantially similar in chemical structure to a controlled substance, §802(32)(A)(i). Second, that an alleged analogue either has, or is represented or intended to have, a stimulant, depressant, hallucinogenic effect on the central nervous system that is substantially similar to that of a controlled substance, §§802(32)(A)(ii), (iii). Brief for United States 3. Because we need not decide in this case whether that interpretation is correct, we assume for the sake of argument that it is.

those features knows all of the facts that make his conduct illegal, just as a defendant who knows he possesses heroin knows all of the facts that make his conduct illegal. A defendant need not know of the existence of the Analogue Act to know that he was dealing with "a controlled substance."

B

The Court of Appeals did not adhere to §813's command to treat a controlled substance analogue "as a controlled substance in schedule I," and, accordingly, it did not apply the mental-state requirement in §841(a)(1). Instead, it concluded that the only mental state requirement for prosecutions involving controlled substance analogues is the one in §813—that the analogues be "intended for human consumption." 753 F. 3d, at 436 (citing *United States* v. *Klecker*, 348 F. 3d 69, 71 (CA4 2003)). Because that interpretation is inconsistent with the text and structure of the statutes, we decline to adopt it.

Unsurprisingly, neither the Government nor McFadden defends the Court of Appeals' position. But their alternative interpretations fare no better. The Government agrees that the knowledge requirement in §841(a)(1) applies to prosecutions involving controlled substance analogues, yet contends that it is met if the "defendant knew he was dealing with an illegal or regulated substance" under some law. Brief for United States 15. Section 841(a)(1), however, requires that a defendant knew he was dealing with "a controlled substance." That term includes only those drugs listed on the federal drug schedules or treated as such by operation of the Analogue Act. §§802(6), 813. It is not broad enough to include all substances regulated by any law.[3]

---

[3] Although the Government must prove that a defendant knew that the substance in question was "a controlled substance" under federal law, the Government need not introduce direct evidence of such

For his part, McFadden contends that, in the context of analogues, knowledge of "a controlled substance" can *only* be established by knowledge of the characteristics that make a substance an "analogue" under the Act. In support of that argument, he relies heavily on our conclusion in *Staples* v. *United States*, 511 U. S. 600 (1994), that a statute making it "'unlawful for any person . . . to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record,'" *id.,* at 605 (quoting 26 U. S. C. §5861(d)), required proof that a defendant "knew of the features of his AR–15 that brought it within the scope of the Act," 511 U. S., at 619. McFadden reasons by analogy that a defendant convicted under §841(a)(1) must also know the features of the substance that brought it within the scope of the Analogue Act. But that position ignores an important textual distinction between §841(a)(1) and the statute at issue in *Staples*. The statute at issue in *Staples* defined "a firearm" by its physical features such as the length of its barrel and its capacity to shoot more than one shot with a single function of the trigger. Unlike those physical features that brought the firearm "within the scope of" that statute, the feature of a substance "that br[ings] it within the scope of" §841(a)(1) is the fact that it is "'controlled.'" §802(6). Knowledge of *that* fact can be established in the two ways previously discussed: either by knowledge that a substance is listed or treated as listed by operation of the Analogue Act, §§802(6), 813, or by knowledge of the physical characteristics that give rise to that treatment.

---

knowledge. As with prosecutions involving substances actually listed on the drug schedules, the Government may offer circumstantial evidence of that knowledge. See n. 1, *supra.* In such cases, it will be left to the trier of fact to determine whether the circumstantial evidence proves that the defendant knew that the substance was a controlled substance under the CSA or Analogue Act, as opposed to under any other federal or state laws.

*Supra,* at 7.

McFadden also invokes the canon of constitutional avoidance, arguing that we must adopt his interpretation of the statute lest it be rendered unconstitutionally vague. But that argument fails on two grounds. Under our precedents, this canon "is a tool for choosing between competing plausible interpretations of a provision." *Warger* v. *Shauers*, 574 U. S. ___, ___ (2014) (slip op., at 10) (internal quotation marks omitted). It "has no application" in the interpretation of an unambiguous statute such as this one. See *ibid.* (internal quotation marks omitted). Even if this statute were ambiguous, McFadden's argument would falter. Under our precedents, a scienter requirement in a statute "alleviate[s] vagueness concerns," "narrow[s] the scope of the [its] prohibition[,] and limit[s] prosecutorial discretion." *Gonzales* v. *Carhart*, 550 U. S. 124, 149, 150 (2007). The scienter requirement in this statute does not, as McFadden suggests, render the statute vague. Moreover, to the extent McFadden suggests that the substantial similarity test for defining analogues is itself indeterminate, his proposed alternative scienter requirement would do nothing to cure that infirmity.

## III

The District Court's instructions to the jury did not fully convey the mental state required by the Analogue Act. The jury was instructed only that McFadden had to "knowingly and intentionally distribut[e] a mixture or substance that has an actual, intended, or claimed stimulant, depressant, or hallucinogenic effect on the central nervous system" substantially similar to that of a controlled substance. App. 40.

The Government contends that any error in the jury instructions was harmless because no rational jury could have concluded that McFadden was unaware that the substances he was distributing were controlled. We have

recognized that even the omission of an element from a jury charge is subject to harmless-error analysis. *Neder* v. *United States*, 527 U. S. 1, 15 (1999). Because the Court of Appeals did not address that issue, we remand for that court to consider it in the first instance.

*          *          *

For the foregoing reasons, we vacate the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

---

No. 14–378

---

STEPHEN DOMINICK MCFADDEN, PETITIONER *v.*
UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FOURTH CIRCUIT

[June 18, 2015]

CHIEF JUSTICE ROBERTS, concurring in part and concurring in the judgment.

I join the Court's opinion, except to the extent that it says the Government can satisfy the mental state requirement of Section 841(a)(1) "by showing that the defendant knew the identity of the substance he possessed." *Ante*, at 5. Section 841(a)(1) makes it "unlawful for any person knowingly . . . to manufacture, distribute, or dispense . . . a controlled substance." As the Court points out, the word "knowingly" applies "not just to the statute's verbs, but also to the object of those verbs—'a controlled substance.'" *Ante*, at 4 (emphasis deleted). That suggests that a defendant needs to know more than the identity of the substance; he needs to know that the substance is *controlled*. See, *e.g.*, *United States* v. *Howard*, 773 F. 3d 519, 526 (CA4 2014); *United States* v. *Washington*, 596 F. 3d 926, 944 (CA8 2010); *United States* v. *Rogers*, 387 F. 3d 925, 935 (CA7 2004).

In cases involving well-known drugs such as heroin, a defendant's knowledge of the identity of the substance can be compelling evidence that he knows the substance is controlled. See *United States* v. *Turcotte*, 405 F. 3d 515, 525 (CA7 2005). But that is not necessarily true for lesser known drugs. A pop quiz for any reader who doubts the point: Two drugs—dextromethorphan and hydrocodone—

are both used as cough suppressants. They are also both used as recreational drugs. Which one is a controlled substance?*

The Court says that knowledge of the substance's identity suffices because "ignorance of the law is typically no defense to criminal prosecution." *Ante,* at 5. I agree that is "typically" true. But when "there is a legal element in the definition of the offense," a person's lack of knowledge regarding that legal element *can* be a defense. *Liparota* v. *United States*, 471 U. S. 419, 425, n. 9 (1985). And here, there is arguably a legal element in Section 841(a)(1)— that the substance be "controlled."

The analogy the Court drew in *Liparota* was to a charge of receipt of stolen property: It is no defense that the defendant did not know such receipt was illegal, but it is a defense that he did not know the property was stolen. Here, the argument goes, it is no defense that a defendant did not know it was illegal to possess a controlled substance, but it is a defense that he did not know the substance was controlled.

Ultimately, the Court's statements on this issue are not necessary to its conclusion that the District Court's jury instructions "did not fully convey the mental state required by the Analogue Act." *Ante,* at 10. Those statements should therefore not be regarded as controlling if the issue arises in a future case.

————————

*The answer is hydrocodone.