[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11836
Non-Argument Calendar
_____

D.C. Docket No. 9:15-cr-80160-RLR-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

PATRICK D. TURNER,

Defendant - Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 5, 2017)

Before MARTIN, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Patrick Turner appeals the district court's denial of his motion to suppress evidence and the court's decision to sentence him as an armed career criminal. After careful consideration, we find no reversible error and therefore affirm.

Police seized a firearm from Turner during a warrantless investigatory detention.  He contends that the district court should have suppressed evidence about the firearm because the police officers created the circumstances giving rise to the reasonable suspicion that supported his investigatory detention.  But absent improper provocation, police officers are entitled to form reasonable suspicion based on a suspect's reaction to their arrival.  Here, another man's reaction gave rise to reasonable suspicion and justified Turner's investigatory detention.

At sentencing, the district court determined that Turner was an armed career criminal under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), and therefore sentenced him to a mandatory minimum 15 years in prison.  Turner contends that the district court erred in finding that three of his prior criminal convictions were each a serious drug offense sufficient to qualify him as an armed career criminal.  He argues that to qualify as a "serious drug offense" under ACCA, a state crime must have as an element knowledge of the illicit nature of the drugs and that his Florida convictions lacked this element.  This argument is foreclosed, however, by our Court's precedent.

## I.   FACTS

2

After West Palm Beach Police officers discovered a firearm on Turner, he was arrested and indicted for, as a convicted felon, possessing a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).  Turner filed a motion to suppress the firearm and ammunition, as well as statements he made in connection with their seizure, arguing that this evidence was the fruit of an unlawful warrantless search and seizure in violation of the Fourth Amendment.  A magistrate judge held a hearing on this motion, and the following facts were elicited.

Officer Jerrel Negron testified that he and two colleagues were patrolling a 25 block area of West Palm Beach in the early morning.  The officers focused on this area in response to recent homicides and shootings and considered it to be a high crime area.  They patrolled in a black, unmarked police vehicle and were dressed in tactical vests that said "Police" on the front and back in white letters.  Negron was seated in the rear passenger seat while one of his colleagues drove.  Around one o'clock in the morning, the officers noticed three people standing in a parking area off an alley.  The alley was accessible to the public.  The officers drove into the alley with their headlights illuminated, and they observed three cars in a row in the parking area parked perpendicular to the alley.  The officers observed that three men were gathered around the car that was the farthest away.

3

Of the three men, Cornelius Daniels, Wesley Hicks, and Turner, Turner was the closest to the alley and the officers.

The officers parked their vehicle at the edge of the parking area and got out. As the officers walked toward the three men, they observed Hicks drop down toward the ground behind the third car. Negron pulled out his flashlight and illuminated Hicks while his two colleagues both pulled out their firearms. The officers ordered Hicks to stand up, which he did. After another officer patted Hicks down, Negron turned to search the area and noticed the butt of a firearm protruding from Turner's pocket. Turner stated that he had a firearm on him, and when Negron asked if he had a permit, Turner admitted that he did not. Turner also stated that he was a convicted felon. After confirming this information, Negron arrested Turner.

Officer Stephen Mooney, the officer driving the unmarked police vehicle that night, testified to the same sequence of events as Negron. He added that seeing Hicks duck down raised his level of concern in light of the recent homicides in the area.

Daniels testified for the defense. He stated that the parking area where these events took place was behind his apartment. Turner had just gotten off work, and the three men were talking together around Daniels's mother's car. During the 30 to 40 minutes while they talked, Hicks did not see a firearm. As the men talked,

4

the police officers drove slowly into the alley with no headlights on.  The officers

pulled up to the parking area and exited their vehicle with their guns drawn.  As

they exited, Hicks fidgeted, moving his shoulders from left to right.  Daniels

denied that Hicks ever dropped between the cars.  In response, the officers told the

men not to move again or they would be shot.  The officers then grabbed Turner,

frisked him, and retrieved a firearm.  During this time, Turner did not say anything

to the officers about having a firearm or being a convicted felon.

    After hearing this testimony, the magistrate judge found that the events

occurred much as Negron described them.  He made the following specific

findings of fact about the incident.[1]  First, the headlights on the officers' vehicle

were illuminated as they drove into the alley.  Second, the officers did not draw

their firearms until after Hicks moved.  Third, Negron observed the firearm in

Turner's pocket, and Turner spontaneously stated that he had a firearm.  The

magistrate judge credited all three witnesses' descriptions of Hicks's activity,

concluding that whether Hicks ducked or flinched, "[i]t was enough of a move to

be noticed by all concerned."  Report Recommending That Def.'s Mot. to Suppress

be Denied 5 (Doc. 35).[2]  After setting out these facts, the magistrate judge

concluded that the officers reasonably detained Turner, Daniels, and Hicks to

---

[1] The magistrate judge resolved additional inconsistencies relating to the precise location of all the individuals in question and the number of officers on the scene, but neither of these factual disputes is relevant to the outcome of this case.

[2] Citations to "Doc." refer to docket entries in the district court record in this case.

5

neutralize the potential threat of physical harm and that Negron discovered Turner's firearm during the course of this permissible detention.  Accordingly, the magistrate judge recommended that Turner's motion to suppress be denied.  The district court adopted this recommendation over Turner's objections.

Turner pled guilty.  His Presentence Investigation Report classified him as an armed career criminal subject to a 15 year minimum sentence based on several prior convictions for violent felonies and serious drug offenses.  The prior offenses included three convictions under Florida law for selling cocaine within 1,000 feet of a church or school.  Turner objected to this classification.  At Turner's sentencing hearing, the United States stipulated that it would rely on only the three Florida cocaine distribution convictions for purposes of arguing that Turner should be sentenced as an armed career criminal.  The district court determined that these Florida convictions qualified as serious drug offenses under ACCA and sentenced Turner to 15 years in prison.  This appeal followed.

## II.  STANDARD OF REVIEW

In reviewing the district court's denial of a motion to suppress, we review the district court's findings of fact for clear error and the application of law to those facts *de novo*.  *United States v. Epps*, 613 F.3d 1093, 1097 (11th Cir. 2010).  A district court's choice between two permissible views of the evidence cannot be clear error.  *United States v. Ndiaye*, 434 F.3d 1270, 1305 (11th Cir. 2006).  All

facts are construed in the light most favorable to the prevailing party below; here, the government. *United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012).

We also review *de novo* whether a conviction qualifies as a serious drug offense under ACCA. *United States v. Robinson*, 583 F.3d 1292, 1294 (11th Cir. 2009).

## III. DISCUSSION

### A.    Motion to Suppress

Turner appeals the district court's denial of his motion to suppress the firearm seized from his person during the warrantless search. He argues that the officers were responsible for creating the circumstances that justified this seizure and therefore should not have been allowed to benefit from it. But a person's reaction to police presence can serve as the basis for an investigatory stop, as it did here. Turner's firearm was seized as the result of a legitimate investigatory detention, so we uphold the district court's denial of his motion to suppress the firearm.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Not all interactions between law enforcement and private citizens implicate this Amendment. *See United States v. Perez*, 443 F.3d 772, 777 (11th Cir. 2006). "Only when the

7

officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may [a court] conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968).  We have categorized encounters between police and citizens into three types:  "(1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests." *Perez*, 443 F.3d at 777.  In this case, Turner's encounter with the police involved all three categories.  On appeal, however, he challenges only the investigatory detention that led to his later arrest, so we confine our analysis below to the first two stages of the encounter.

First, the district court's factual findings establish that the officers' initial approach did not implicate the Fourth Amendment.[3]  "[O]fficers may seek consent-based encounters if they are lawfully present in the place where the consensual encounter occurs." *Kentucky v. King*, 563 U.S. 452, 463 (2011).

Here, the magistrate judge found that the three officers drove down the alley toward Turner, Daniels, and Hicks with their unmarked police vehicle's headlights illuminated, came to a stop near the men, and got out of the vehicle.  The record reveals that the alley in question was accessible to the public, so the officers lawfully were present there.  And the officers had not yet done anything to restrain

---

[3] While the evidence regarding the events on the night in question was conflicting in some respects, the magistrate judge held an evidentiary hearing and had an opportunity to observe the witnesses who testified.  The magistrate judge's choice to credit the officers' testimony where it conflicted with Daniels's testimony was not clearly erroneous.

the men's freedom of movement.  Up to this point, therefore, the encounter between the officers and the men was consensual.

What happened next transformed this consensual encounter into an investigatory detention.  The magistrate judge found that after alighting from their vehicle, the officers saw Hicks make a sudden movement.  In response, two of the officers drew their weapons and ordered Hicks to stand up and show his hands.  The record does not reflect that any of the men ran or refused to comply, thus they submitted to the show of authority by police officers.  At that point, they had been detained.  *See California v. Hodari D.*, 499 U.S. 621, 626 (1991).

Despite Turner's argument to the contrary, we conclude that this detention was legitimate.  We determine whether an investigatory detention was legal under the Fourth Amendment by asking two questions:  (1) "whether the [detention] was justified at its inception," and (2) "whether the officer's actions were reasonably related in scope to the circumstances that justified the [detention] in the first place."  *United States v. Griffin*, 696 F.3d 1354, 1358 (11th Cir. 2012).  In this case, we answer both questions in the affirmative.

The detention was justified at its inception.  "[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot."  *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).  Reasonable suspicion is a less demanding

9

standard than probable cause, but the Fourth Amendment requires objective justification for police to make an investigatory stop. *Id.* Reliance on a mere hunch is insufficient. *United States v. Arvizu*, 534 U.S. 266, 274 (2002). When determining whether reasonable suspicion exists, a court must examine the "totality of the circumstances" to ascertain whether the officer had a particularized and objective basis for suspecting legal wrongdoing. *Id.* at 273. The fact that the stop occurred in a "high crime area" is among the relevant contextual considerations to this analysis. *Wardlow*, 528 U.S. at 124.

In this case, the totality of the circumstances gave the officers reasonable suspicion to detain the men. The magistrate judge found that the three men were gathered around a parked car in an alley at one o'clock in the morning in an area that had recently experienced shootings and homicides. The officers drove slowly into an alley in an unmarked vehicle with its headlights illuminated. Hicks flinched or ducked just after three officers wearing police vests exited an unmarked vehicle. Importantly, the magistrate judge found the officers did not draw their weapons until Hicks moved. Taken together, these facts gave the officers reasonable suspicion that Hicks would engage in some sort of violence against the officers, and the police were justified in temporarily detaining the three men until

10

they could allay those fears.[4] *See United States v. Gibson*, 64 F.3d 617, 624 n.8 (11th Cir. 1995) (listing a suspect's reaching behind his back when confronted by police among the circumstances that provided reasonable suspicion to detain him).

Turner contends that the ominous approach of the unmarked police vehicle caused Hicks to make the unexpected movement that officers used to justify the detention and that officers may not rely on reasonable suspicion created as a result of their own actions. Although "officers cannot improperly provoke . . . a person" in order to justify a stop, *United States v. Franklin*, 323 F.3d 1298, 1302 (11th Cir. 2003), they are otherwise entitled to rely on a suspect's reaction to their presence. Indeed, we have cited frequently a suspect's reaction to police presence among the factors supporting reasonable suspicion in a case. *See, e.g.*, *United States v. Lindsey*, 482 F.3d 1285, 1291 (11th Cir. 2007) (sudden movement of vehicle from parked location to gas pump when officer came into view); *United States v. Hunter*, 291 F.3d 1302, 1306 (11th Cir. 2002) (turning and walking quickly away from officers); *United States v. Gordon*, 231 F.3d 750, 756 (11th Cir. 2000)

---

[4] Flinching or ducking when police officers exit a vehicle would not itself provide reasonable suspicion for an investigatory detention. In fact, this Court has in the past suggested that getting on the ground would be a reasonable response to the potential for violent confrontation that can accompany police presence. *See United States v. Franklin*, 323 F.3d 1298, 1303 (11th Cir. 2003) ("While a reasonable person might have believed the [SWAT] team's arrival indicated some imminent violence . . . . [that] reasonable person might have dropped to the ground."). But here it was one o'clock in the morning, in an alley, in an area where shootings had recently occurred, and there was a car between Hicks and the officers that prevented them from seeing what he was doing. Given the totality of these circumstances, the officers were justified in fearing for their safety.

11

(making eye contact with officer, moving quickly toward an adjacent car, and driving away). Put simply, in this case the officers were entitled to rely on Hicks's reaction to their arrival in forming reasonable suspicion to detain him and those nearby, including Turner.

Because police were justified in detaining Hicks, they were also justified in detaining Turner, who was standing nearby. *See Lewis*, 674 F.3d at 1306. "Case precedent from both the Supreme Court and this Circuit has established that, for safety reasons, officers may, in some circumstances, briefly detain individuals about whom they have no individualized reasonable suspicion of criminal activity in the course of conducting a valid [investigatory detention] as to other related individuals." *Lewis*, 674 F.3d at 1306. Here, a concern for their own safety permitted the officers "to control the movements of nearby associates and exercise command over the situation once the officers had reasonable suspicion of criminal activity that warranted further investigation." *Id.* at 1308. Thus, Turner was legitimately detained alongside Hicks.

Having determined that Turner's initial detention was legitimate to ensure officer safety, we also conclude that the officers' actions here were reasonably related to this safety concern. The magistrate judge determined that Officer Negron was merely walking behind Turner, who was the closest of the three men to the officers. It was at this moment that Negron noticed Turner's firearm, which

12

was sticking out of his pocket.  Walking up behind Turner and looking at his pocket was well within the scope of ensuring officer safety, so Negron's actions up to discovering Turner's firearm did not violate the Fourth Amendment. Accordingly, we affirm the district court's order denying Turner's motion to suppress his firearm.

## B.    Armed Career Criminal Enhancement

Turner also appeals the district court's determination that three of his prior convictions qualified as serious drug offenses sufficient to enhance his sentence under ACCA.  Turner contends that a state crime must have a mens rea element in order to qualify as such a serious drug offense.  Because the Florida cocaine distribution statute he was convicted of violating required no mens rea regarding the illicit nature of the controlled substance, Turner argues that it properly could not serve to enhance his sentence.  But binding prior panel precedent forecloses this argument.  Turner acknowledges this precedent but insists that it has been undermined by Supreme Court case law.  We disagree and conclude that the district court properly enhanced Turner's sentence under ACCA.

The district court ruled that Turner's three prior Florida drug convictions each constituted a "serious drug offense" and could serve as the basis for an enhanced sentence under ACCA.  18 U.S.C. § 924(e).  ACCA imposes a mandatory minimum sentence of 15 years on a defendant convicted of being a

13

felon in possession of a firearm who also has three prior state or federal convictions for "a violent felony," "a serious drug offense," or both. *Id.* § 924(e)(1). The term "serious drug offense" includes "an offense under State law" that "involv[es] manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance" and that has "a maximum term of imprisonment of ten years or more." *See id.* § 924(e)(2)(A)(ii).

We agree with the district court's determination that Turner's three previous convictions under Florida law for selling cocaine qualify as serious drug offenses under ACCA. *See* Fla. Stat. § 893.13(1). Under Florida law, it is a crime to sell, manufacture, or deliver (or possess with intent to sell, manufacture, or deliver) cocaine. Fla. Stat. § 893.13(1)(a). An individual, like Turner, who is convicted of selling cocaine within 1,000 feet of a school or place of worship faces up to 15 years' imprisonment. *Id.* §§ 775.082(3)(d), 893.13(1)(c), (e).

We have held that violations of § 893.13(1) qualify as a serious drug offense under ACCA, even though Florida law imposes no mens rea requirement with respect to the illicit nature of the controlled substance. *See United States v. Smith*, 775 F.3d 1262 (11th Cir. 2014). Turner argues that *Smith* was wrongly decided because the panel failed to consider *Begay v. United States*, 553 U.S. 137 (2008), in which the Supreme Court held that strict liability crimes could not be violent felonies under ACCA's since-invalidated residual clause. *See id.*, 553 U.S. at 147–

48.[5]  But *Smith* was decided in 2014, well after *Begay*, and is binding Circuit law. *See Smith v. GTE Corp.*, 236 F.3d 1292, 1301–04 (11th Cir. 2001) (categorically rejecting an "overlooked reason" exception to the prior panel precedent rule).

Turner argues that two post-*Smith* Supreme Court cases—*Elonis v. United States*, 135 S. Ct. 2001 (2015), and *McFadden v. United States*, 135 S. Ct. 2298 (2015)—have undermined *Smith* to the point of abrogation.  We disagree.  In *Elonis*, the Supreme Court read a mens rea requirement into the federal statute criminalizing interstate threats despite the absence of such a requirement from the statute's text.  *See* 135 S. Ct. at 2012.  In *McFadden*, the Court similarly read a mens rea requirement into the federal law treating analogues of controlled substances the same as controlled substances.  135 S. Ct. at 2305.  But these interpretations of substantive federal criminal law have no bearing on ACCA's scheme providing sentencing enhancements based on certain types of prior state law convictions, and they do not abrogate our holding in *Smith*.  Thus, we conclude that the district court did not err in determining that Turner's § 893.13(1) convictions qualified as serious drug offenses sufficient to enhance his sentence under ACCA.

---

[5] Several years after *Begay*, the Supreme Court held that ACCA's residual clause was void for vagueness.  *See Johnson v. United States*, 135 S. Ct. 2551 (2015) (holding ACCA's residual clause void for vagueness).

15

## IV. CONCLUSION

For all of the foregoing reasons, we affirm the district court's denial of

Turner's motion to suppress and his sentence.

**AFFIRMED.**