IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 21, 2024

**STATE OF TENNESSEE v. JOSHUA W. GABEHART**

**Appeal from the Circuit Court for Maury County**
**No. 2021-CR-28812       Russell Parkes, Judge**

_____

**No. M2023-00237-CCA-R3-CD**

_____

A Maury County jury convicted the Defendant, Joshua W. Gabehart, of the unlawful sale of fentanyl, a Schedule II controlled substance. The trial court sentenced the Defendant to serve twelve years in confinement. On appeal, the Defendant argues that the evidence is legally insufficient to support his conviction because the State failed to prove that he knew he was selling fentanyl instead of heroin. Upon our review, we respectfully affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and MATTHEW J. WILSON, JJ., joined.

Ronald G. Freemon, Columbia, Tennessee, for the appellant, Joshua W. Gabehart.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Brent A. Cooper, District Attorney General; and Pamela S. Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL BACKGROUND**

On August 8, 2020, Columbia Police Department officers arranged for a confidential informant ("CI") to purchase what they believed would be approximately one gram of heroin from the Defendant. The CI, who had previously purchased heroin from the Defendant, was facing criminal charges and volunteered as a CI.

The Defendant contacted the CI, stating that he had "just got some new white" and that it would cost $170. They agreed to meet in a parking lot near a strip mall. The CI met the Defendant at the strip mall parking lot.

Upon arrival, the CI got into the back seat of the Defendant's car, with the Defendant and another person in the front seats. The Defendant opened the bag containing the substance and prepared to weigh it when he discovered that the digital scale needed batteries. The passenger then got out of the car to get batteries and returned with them a short time later. In the meantime, the Defendant used some of the substance from the bag. After the passenger returned, the Defendant weighed one gram of the substance on a digital scale and gave it to the CI packaged in a receipt. The CI gave the Defendant money, left, and then drove back to the officers to provide them with the substance. The entire transaction was video recorded by the CI using equipment set up by officers.

Once they received the substance from the CI, officers tested it using a multi-drug field test kit and discovered that the substance possibly contained fentanyl. The officers sent the substance to the Tennessee Bureau of Investigation ("TBI") for formal testing. The TBI confirmed that the substance was .89 grams of fentanyl.

At trial, Officer Daniel Willis testified on behalf of the State. Officer Willis testified that he was a narcotics VICE investigator with the Columbia Police Department at the time of this transaction. He stated that there was no "definitive visual way" to differentiate between heroin, fentanyl, or a cutting agent. Officer Willis testified that fentanyl was more pervasive in the community than heroin. He also stated that fentanyl was "more profitable" for a drug dealer.

The jury found the Defendant guilty of the sale of fentanyl, a Schedule II controlled substance. Following a hearing, the trial court sentenced him to twelve years imprisonment. The Defendant filed a timely motion for a new trial that was denied on February 6, 2023. He filed a timely notice of appeal twenty-one days later.

## STANDARD OF APPELLATE REVIEW

"The standard for appellate review of a claim challenging the sufficiency of the State's evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Miller*, 638 S.W.3d 136, 157 (Tenn. 2021) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A review of the sufficiency of the evidence is "highly deferential" to the outcome determined by the jury at trial. *See State v. Lyons*, 669 S.W.3d 775, 791 (Tenn. 2023). This court "do[es] not reweigh the evidence, because questions regarding witness credibility, the weight to be given the evidence, and factual

issues raised by the evidence are resolved by the jury, as the trier of fact." *State v. Shackleford*, 673 S.W.3d 243, 250 (Tenn. 2023) (citations omitted). Thus, we must resolve all conflicts of evidence in favor of the State's theory and view the testimony in a light most favorable to the State. *State v. McKinney*, 669 S.W.3d 753, 772 (Tenn. 2023).

## ANALYSIS

The Defendant was convicted under Tennessee Code Annotated section 39-17-417(a)(3) (2018), which provides "[i]t is an offense for a defendant to knowingly: . . . (3) [s]ell a controlled substance[.]" In this appeal, the Defendant does not challenge that fentanyl is a controlled substance or that he sold a controlled substance to the CI. Rather, he argues only that the proof is insufficient to show that he knew the substance was fentanyl and, therefore, that he lacked the proper *mens rea* for conviction. The assumption underlying the Defendant's argument is that the nature of the controlled substance is an essential element of the crime. For the reasons we discuss below, we conclude that it is not.

In Tennessee, "[t]he power to define criminal offenses and assess punishments for crimes is vested in the legislature." *State v. Gentry*, 538 S.W.3d 413, 420 (Tenn. 2017). "In general, our legislature has chosen to define criminal offenses through the combination of two components: a voluntary act and a culpable mental state." *State v. Hollon*, 671 S.W.3d 561, 565 (Tenn. Crim. App. 2023) (first citing Tenn. Code Ann. § 39-11-101(2) (2018); and then citing *State v. Turner*, 953 S.W.2d 213, 216 (Tenn. Crim. App. 1996)).

The plain language of section 39-17-417(a)(3) defines the crime with two conduct elements—one involving a sale and one involving a controlled substance—and one mental state element applying to each of those conduct elements. Tenn. Code Ann. § 39-17-417(a). Concerning the sale itself, the State must prove that the defendant was "aware of the nature of the conduct" or that his or her conduct involved a sale. *Id.* § 39-11-302(b) ("'Knowing' refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist."). With respect to the controlled substances element, the State must prove that the Defendant was aware that the "circumstances exist" or that the object being sold was a controlled substance. *Id.*

Importantly, "[t]he word 'knowingly' appears only a single time in the statute, and only in subsection (a) where the offense is defined." *State v. Reeves*, No. W2012-02656-CCA-R3-CD, 2014 WL 1593153, at *8 (Tenn. Crim. App. Apr. 17, 2014), *perm. app. denied* (Tenn. Sept. 19, 2014). The word does not appear in the same section mentioning the nature of the controlled substance. To the contrary, the legislature mentioned the nature

of the controlled substance only when setting the *punishment* for the crime in Tennessee Code Annotated section 39-17-417(b)-(j). In this way, the "mens rea requirement of subsection (a) is independent" of the nature and quantity of the controlled substance identified in those subsections. *Reeves*, 2014 WL 1593153, at *8.

Nothing in the statute's plain language requires, or even mentions, that the State must prove a defendant's awareness of the *nature* of the controlled substance being sold before criminal liability may attach. As such, while the sale of a controlled substance will be punished differently based on the type and weight of the controlled substance at issue, the substantive offense itself is complete upon the defendant's knowing sale of "a controlled substance." In other words, Tennessee Code Annotated section 39-17-417(a) does not require evidence that the Defendant knew or was aware of the nature or weight of the controlled substance at issue.

This conclusion is consistent with our decision in *State v. Reeves*. In that case, the defendant argued that the "knowingly" mens rea in section 39-17-417(a) required the State to prove that he was aware of *the weight* of the controlled substance he possessed. We rejected this argument and recognized that the weight of the controlled substance, like the nature of the substance here, "serves merely to delineate *the punishment* for violating subsection (a)[.]" *Reeves*, 2014 WL 1593153, at *7-8 (emphasis added). In so recognizing, we held that a "defendant is in violation of the statute if he knowingly possesses a controlled substance and intends to deliver it, regardless of whether he had knowledge as to the actual amount of the controlled substance." *Id.*

Our conclusion is also consistent with how courts have interpreted similar statutes. For example, federal law makes it "unlawful for any person knowingly or intentionally . . . (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). Like Tennessee law, federal law then further identifies the punishment for "any person who violates subsection (a) of this section" separately by reference to the nature and weight of particular controlled substances. *Id.* § 841(b).[1] With respect to federal law, the United States Supreme Court has recognized that "the ordinary meaning" of 21 U.S.C. § 841(a)(1) "requires a defendant to know only that the substance he is dealing with is *some unspecified*

---

[1] The similarity between federal and state law in this regard is not accidental. Our state law was patterned on the Uniform Controlled Substances Act, which, in turn, was itself "based in large measure on the Federal Controlled Substances Act[.]" *State v. Edwards*, 572 S.W.2d 917, 920 n.2 (Tenn. 1978); *see also State v. Hutcherson*, No. W2022-01046-CCA-R3-CD, 2023 WL 4401136, at *5 (Tenn. Crim. App. July 7, 2023) (recognizing that the Tennessee Drug Control Act of 1989 was "enacted to compliment . . . federal laws regarding drug control." (citation and internal quotation marks omitted)), *no perm. app. filed*.

*substance* listed on the federal drug schedules." *McFadden v. United States*, 576 U.S. 186, 192 (2015) (emphasis added).

As such, a defendant may be convicted under the substantially identical federal law upon proof that he "knew he possessed a substance listed on the schedules, even if he did not know which substance it was." *Id.* This recognition by the Supreme Court confirmed what the federal circuit courts of appeals had long recognized: that "the government need not 'prove mens rea as to the type and quantity of the drugs' in order to establish a violation of § 841." *United States v. Villarce*, 323 F.3d 435, 439 (6th Cir. 2003) (also observing that "drug type and quantity are irrelevant to the mens rea element of § 841(a), which requires nothing more specific than an intent to distribute a controlled substance." (citations omitted)); *see also, e.g.*, *United States v. Thornton*, 822 Fed. App'x 397, 406 n.1 (6th Cir. 2020) ("Thornton briefly argues that the evidence is insufficient to sustain his conviction because the government failed to prove that he knew he was distributing carfentanyl rather than heroin. That argument has no merit because the government only had to prove that Thornton knew 'that the substance he [was] dealing with [was] some unspecified substance listed on the federal drug schedules.'" (quoting *McFadden*, 576 U.S. at 191 (alterations in original)).

Of course, because the nature of the controlled substance is a "fact that exposes a defendant to a greater potential sentence," that fact "must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." *See, e.g.*, *Cunningham v. California*, 549 U.S. 270, 281 (2007) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). Thus, in this case, to establish the relevant offense class for purposes of punishment, the State was required to plead and prove beyond a reasonable doubt that the controlled substance sold by the Defendant "involved" an amount that was "point five (0.5) grams or more of any substance containing . . . fentanyl[.]" Tenn. Code Ann. § 39-17-417(c)(1); *State v. Ostein*, 293 S.W.3d 519, 530 (Tenn. 2009) ("The State must also prove, of course, that the substance collected at the scene is the controlled substance alleged and was present in the amounts alleged."). To be clear, however, nothing in the statute requires the State to prove that a defendant knew or was aware of the nature of the controlled substance. Instead, the State need only prove beyond a reasonable doubt that the offense involved the specific drug and amount alleged in the indictment, not that the defendant knew "the exact nature" of the controlled substance itself. *See United States v. Brower*, 336 F.3d 274, 277 (4th Cir. 2003); *see also United States v. Dado*, 759 F.3d 550, 570 (6th Cir. 2014).

With this understanding, the proof was legally sufficient to support the Defendant's conviction because the evidence showed that the Defendant was aware that he was selling "a controlled substance" to the CI. The State introduced evidence that, before the sale, the Defendant messaged the CI saying that he "just got some new white[.]" The CI called the

Defendant, confirmed the purchase price for the "white," and agreed on a place to meet. During the sale, the CI wore a hidden camera. Video from this camera showed the CI getting into the back seat of the Defendant's car, with the Defendant and another person in the front seats. The Defendant opened a bag and was preparing to weigh the substance when he discovered that the electronic scale needed batteries. While the other person got out of the car to get batteries, the Defendant used some of the substance. Once the other person returned, the Defendant weighed a white powdery substance, packaged it in a receipt, and gave it to the CI. The CI gave the Defendant money and then drove back to the officers. Also at trial, the State offered expert testimony establishing that the controlled substance weighed .89 grams and contained fentanyl.

From this evidence, we easily conclude that a reasonable juror could have found beyond a reasonable doubt that (1) the Defendant was aware that he was selling a controlled substance to the CI; (2) the substance weighed 0.5 grams or more; and (3) the substance contained fentanyl, a Schedule II controlled substance. Accordingly, we affirm the Defendant's conviction for the sale of a controlled substance.

## CONCLUSION

In summary, we conclude that Tennessee Code Annotated section 39-17-417(a)(3) requires the State to prove that the Defendant was aware that he was selling "a controlled substance." While the State must also plead and prove the nature and weight of the substance at issue for purposes of punishment, the statute's plain language does not require the State to prove that the defendant knew or was aware of the nature or weight of the controlled substance being sold. As such, because the evidence was legally sufficient to show that the Defendant was aware that he was selling a controlled substance, we hold that his conviction for the sale of fentanyl, a Schedule II controlled substance, is properly sustained. We respectfully affirm the judgment of the trial court.

_____
TOM GREENHOLTZ, JUDGE