**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 23-2643 & 23-2816
_____

UNITED STATES OF AMERICA

v.

DAVID CURRAN,
                    Appellant in No. 23-2643

UNITED STATES OF AMERICA

v.

ROSS LANDFRIED,
                    Appellant in No. 23-2816
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Nos. 2:19-cr-00008-031 & -013)
District Judge: Honorable J. Nicholas Ranjan
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on June 3, 2025

Before: HARDIMAN, BIBAS, and FISHER, *Circuit Judges*

(Filed: June 4, 2025)

———————————

OPINION*

———————————

BIBAS, *Circuit Judge.*

While in federal prison, Ross Landfried and David Curran sold K2 paper to other inmates. K2 paper is paper saturated with illegal drugs, like synthetic cannabinoid or synthetic fentanyl. It is popular in prisons because it can be mailed in undetected, but it has devastating effects. After eating or smoking it, users often projectile vomit, suffer heart attacks, and act violently. For his role, Landfried was convicted of conspiring both to deal drugs and to launder money. Curran was convicted of the drug-conspiracy charge. On appeal, they collectively raise eight issues. But because all their arguments fail, we will affirm their convictions and sentences.

*First*, the evidence more than sufficed to convict Curran. *United States v. Smith*, 294 F.3d 473, 476–77 (3d Cir. 2002). For starters, his cellmate testified that he got his K2 "from my cellie, David Curran." No. 23-2643, JA 533. Plus, he detailed how Curran sold K2 to most of the K2 smokers in their unit. And he explained how Ross Landfried's brother, Noah, had mailed the paper to Curran. The scheme was so successful that the cellmate saw Curran with K2 paper worth more than $10,000. With this evidence, plus his seized prison mail containing illegal drugs, a rational jury could and did easily convict.

---

\* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

*Second*, the District Court did not abuse its discretion in authenticating evidence of Curran's prison mail. *United States v. Turner*, 718 F.3d 226, 232 (3d Cir. 2013). A prison official testified to the chain of custody and the prison's procedures for keeping mail secure, giving the jury a "rational basis" to conclude that the K2-infused mail was authentic. *United States v. Rawlins*, 606 F.3d 73, 82 (3d Cir. 2010) (internal quotation marks omitted). This was enough to fulfill the government's "slight" burden to show authenticity. *Turner*, 718 F.3d at 232 (internal quotation marks omitted).

*Third*, the prosecutor's closing argument at Curran's trial was not so unfairly prejudicial that it violated due process. *United States v. Werme*, 939 F.2d 108, 117 (3d Cir. 1991). Curran first argues that the prosecutor unfairly prejudiced him by saying that Curran registered a phone number belonging to Noah Landfried in the prison-call system. But this was a reasonable inference from the facts. True, soon after, the prosecutor misstated that a phone associated with this number was found in Noah Landfried's car. Yet this statement was not so prejudicial that a curative instruction could not mitigate it, and the District Court instructed the jury not to consider it. *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001). Finally, the prosecutor briefly returned to the phone number and the car. But Curran did not object to this, and any error was not plain because the prosecutor covered slightly different facts and did so merely to add extra context. *United States v. Fulton*, 837 F.3d 281, 307 (3d Cir. 2016).

*Fourth*, the District Court reasonably exercised its discretion to exclude evidence about the acquittals of Ross Landfried's co-conspirators. *United States v. Cunningham*, 694 F.3d 372, 383 (3d Cir. 2012). Letting in the acquittals would have risked confusing the jury.

*United States v. Gricco*, 277 F.3d 339, 352–53 (3d Cir. 2002), *overruled on other grounds as stated in United States v. Cesare*, 581 F.3d 206, 208 n.3 (3d Cir. 2009).

*Fifth*, the District Court did not abuse its discretion in denying Landfried a specific unanimity instruction. *United States v. Beros*, 833 F.2d 455, 463 (3d Cir. 1987). Courts must instruct the jury that to convict a defendant of an offense, it must unanimously find that he committed all the offense's elements. *United States v. Smukler*, 991 F.3d 472, 492 (3d Cir. 2021). The District Court did. Yet Landfried also asked for an instruction that the jury had to be unanimous on more details—say, which drugs he agreed to distribute— because, he argued, the complex conspiracy might confuse the jury. But this is not the "exception[al]" case in which the jury might be confused about unanimity. *Id.* (cleaned up). There was just one conspiracy and the government pursued a narrower theory at trial than in its indictment, so there was little risk of jury confusion. *Id.*

*Sixth*, the District Court did not abuse its discretion by denying Landfried's request for a bill of particulars. *United States v. Urban*, 404 F.3d 754, 771 (3d Cir. 2005). Denying a bill of particulars "does not amount to an abuse of discretion unless the deprivation of the information sought leads to the defendant's inability to adequately prepare his case, to avoid surprise at trial, or to avoid the later risk of double jeopardy." *United States v. Moyer*, 674 F.3d 192, 203 (3d Cir. 2012) (internal quotation marks omitted). Landfried cannot meet this high bar. Between the detailed indictment and access to "voluminous discovery materials," he could have adequately prepared for trial and avoided all surprises. No. 23-2816, Supp. App. 1659; *Urban*, 404 F.3d at 772.

*Seventh*, the District Court correctly and reasonably instructed the jury that it could infer, by circumstantial evidence, Landfried's knowledge that the K2 paper contained a controlled substance. *United States v. Hoffecker*, 530 F.3d 137, 167 (3d Cir. 2008). The government can prove knowledge that the substance is controlled by circumstantial evidence, including "knowledge that a particular substance produces a 'high' similar to" other controlled substances "and knowledge that a particular substance is subject to seizure at customs." *McFadden v. United States*, 576 U.S. 186, 192 n.1 (2015). This is true in Controlled Substance Act cases, not just Analogue Act cases. *See id.* at 191–92. So the instruction was legally correct and not an abuse of discretion.

*Finally*, at sentencing, the government proved by a preponderance of the evidence that Landfried was responsible for 320 kilograms of combined drug weight. *United States v. Titus*, 78 F.4th 595, 600 (3d Cir. 2023). We review the District Court's factual findings about the drug weight for clear error. *Id.* He contends that only one piece of K2 paper in the batch contained drugs, so only that piece (not the whole batch) could count toward his drug weight. Yet even if the issue is preserved, the evidence shows that an agent deemed the entire batch suspicious, and testing from a sample confirmed that it contained illegal drugs. This evidence, plus other testimony that it was the conspirators' practice to saturate with drugs *all* the paper that they sent by mail, is enough. Because this point fails, whether fentanyl or fentanyl analogue is the correct drug makes no difference.

For these reasons, we will affirm Curran's and Landfried's convictions and sentences.